UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

KURT ANTHONY BISHOP,                      )
                                          )
                  Plaintiff,              )
                                          )
v.                                        )        Case No. 04-CV-0031-CVE-SAJ
                                          )
LONG TERM DISABILITY INCOME               )
PLAN OF SAP AMERICA, INC., an             )
ERISA qualified plan administered by      )
SAP AMERICAN, INC.,  LIFE                 )
INSURANCE COMPANY OF NORTH                )
AMERICA, and CIGNA,                       )
                                          )
                  Defendants.             )

<u>OPINION AND ORDER</u>

Plaintiff filed this action to recover benefits and enforce his rights under the Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1101 <u>et</u> <u>seq</u>. ("ERISA").  Plaintiff challenges

the decision by The Life Insurance Company of North America ("LINA") to terminate his long-term

disability ("LTD") benefits under the Long Term Disability Income Plan of SAP America, Inc. (the

"Plan").[1]

**I.**

Plaintiff was hired by SAP America, Inc. ("SAP") in 1994 as a technology consultant.

According to SAP, the essential duties of technology consultant included providing technical

expertise, database administration, paperwork, and "extensive travel."   Administrative Record

("Adm. Rec.") at 220-23.  This job description is an internal SAP document independent from the

---

[1]      Defendants ask the Court to dismiss CIGNA as a named defendant. Dkt. # 27, at 4 n.1.  LINA asserts
that CIGNA is merely a service mark used by LINA and is not a legal entity capable of being sued.
<u>Id.</u>; <u>see</u> Adm. Rec. at 215.  Without objection, the Court **dismisses CIGNA as a party in this action**.

Plan.  Id. at 223.  In contrast to the SAP description, the Department of Labor's Dictionary of Occupational Titles ("DOT") rates the position of technology consultant as sedentary and does not include the travel requirement.  Id. at 349.  In January 2001, SAP accommodated plaintiff's medical conditions by permitting him to work as a technology consultant without requiring him to travel.  See id. at 172, 225.  Due to corporate restructuring, SAP eliminated plaintiff's position in June 2001 and plaintiff was terminated from payroll effective January 1, 2002.  Id. at 219, 305.  Plaintiff's annual salary had been approximately $85,000.  Adm. Rec. at 117.

As an eligible SAP employee, plaintiff became a participant in the Plan, which provides short term disability ("STD") and LTD benefits to qualified participants.  Id. at 8-36.  As an active full-time employee earning more than $60,000, plaintiff was classified as a Group 1 Plan participant.  Id. at 14.  SAP designated LINA as the independent claims administrator of the Plan.  Id. at Supp.1.  LINA is a multi-million dollar corporation which operates under the CIGNA service mark and issues insurance plans nationwide.  LINA is both the claims administrator and the insurer of the Plan.  Id.  The Plan grants LINA discretion "to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact."  Adm. Rec. at Supp.1.

Plaintiff filed a claim for STD benefits in July 2001.  Id. at 126-27.  Plaintiff's medical records indicate that plaintiff suffered from pulmonary disease, chronic asthma, allergies, osteoporosis, intestinal problems, depression, hypertension, migraine headaches, and chronic back pain.  Id. at 172-74.  LINA assigned Daniel A. Nackley, M.D., to review plaintiff's file.  Id.  Dr. Nackley concluded:

It is anticipated that should he have a sedentary job with which he did not have to perform any significant degree of ambulation, lifting, or carrying, he could perform adequately.  However, it is expected that his condition will worsen such that the combination of his impairments would affect his functionality with regard to any type of work.

Lastly, the medical on file documents an impairment such that his ability to travel for his work would be affected in a significant fashion.

Id. at 174.  Based on Dr. Nackley's review, LINA approved plaintiff's STD claim on October 25, 2001.  Adm. Rec. at 175.  It renewed his STD benefits on December 27, 2001.  Id. at 185.

Plaintiff's STD benefits bridged over into LTD benefits as of February 21, 2002.  Id. at 249. In March 2002, the Social Security Administration ("SSA") denied plaintiff's application for disability benefits, finding that "[b]ased on your description of the work you performed as a consultant for several years, evidence indicates that you are capable of doing this type of work." Id. at 301-04.  In August 2002, plaintiff's primary physician, Kenneth W. Piper, M.D., submitted a physical abilities assessment ("PAA") form.  Id. at 291-92.  The PAA asks a physician to identify his or her patient's level of physical work function for an eight hour workday.  Dr. Piper indicated that plaintiff was capable of "sedentary" activities as of August 2002.  Adm. Rec. at 291-92.

In August 2003, LINA requested supplemental medical records from plaintiff.  In response, Dr. Piper submitted medical notes regarding improvements in plaintiff's health, such as "superb" blood pressure.  Id. at 332-33.  Dr. Piper wrote that "we are clearly moving away from a state of severe chronic asthma into much improved status" and "everything is going well." Id.  In September 2003, Dr. Piper submitted a PAA wherein he identified plaintiff as capable of "light" physical work, which is one step above "sedentary." Id. at 339-40.  On this 2003 PAA, Dr. Piper noted that plaintiff was capable of:

> Sitting: continuously (i.e., 5.5 + hours out of 8);
> Standing: frequently (2.5-5 hours out of 8);
> Walking: occasionally (less than 2.5 hours out of 8);
> Balancing: occasionally (less than 2.5 hours out of 8);
> Kneeling: occasionally (less than 2.5 hours out of 8);
> Hearing: continuously (i.e., 5.5 + hours out of 8);
> Reaching: occasionally (less than 2.5 hours out of 8);
> Seeing: continuously (i.e., 5.5 + hours out of 8);
> Smelling/tasting: continuously (i.e., 5.5 + hours out of 8);
> Use of lower extremities: frequently (2.5-5 hours out of 8);
> Exposure to vibration: frequently (2.5-5 hours out of 8);
> Can work around machinery: frequently (2.5-5 hours out of 8).

Id.  In addition, LINA asked Dr. Piper directly whether plaintiff was "able to use fine manipulation at desk level" and he responded "Yes."  Adm. Rec. at 342.  Based on these medical records, LINA determined that plaintiff was not "totally disabled" under the Plan and terminated plaintiff's LTD benefits on September 25, 2003.  Id. at 345-47.  Plaintiff immediately appealed.  Id. at 351-52.

> For Group 1 employees, the Plan defines "Total Disability" as follows:
>
> An Employee will be considered Totally Disabled if, because of Injury or Sickness, he is unable to perform all the essential duties of his occupation.

Id. at 11.  The parties dispute the definition of "his occupation" and whether plaintiff qualifies as "totally disabled."  Plaintiff argues that "his occupation" requires him to travel, while defendants classify plaintiff's occupation as sedentary.  LINA interprets these terms of the Plan based on the DOT definition and SAP's accommodation which waived plaintiff's travel requirement.

Upon appeal, plaintiff failed to provide medical documentation requested by LINA.  In its notice of termination, LINA advised plaintiff to provide any and all medical documentation that he felt supported his LTD claim, including "Medical Office notes from January, 2003 through present [,] Objective test results such as MRIs, x-rays, etc. [and a] narrative from your physician outlining your level of functioning and explaining how your present condition limits you from your job

4

duties." Id. at 346-47.  This notice also informed plaintiff of his rights under ERISA.  Adm. Rec.

at 347.  At this stage, the only documentation plaintiff submitted was a letter from Dr. Piper stating

that "[a]lthough [Bishop's] physical work level would theoretically allow him to perform some

sedentary or light work, I am not clearing him to return him to the workplace.  In my opinion, his

complex medical problems would deteriorate rapidly if he were forced to attempt even sedentary

activities." Id. at 353.  In this letter, Dr. Piper confirmed that he authored the 2003 PAA, which

designated plaintiff as capable of light work.  Id.  Dr. Piper did not submit an amended or corrected

PAA despite LINA's instruction.  Citing Dr. Piper's confirmation of the 2003 PAA and the lack of

any medical evidence to support the physician's speculation on the possibility of future

deterioration, LINA upheld the termination of plaintiff's LTD benefits on December 11, 2003.  Id.

at 362-63.

## II.

On January 14, 2004, plaintiff filed suit, alleging that defendants violated 29 U.S.C. § 1132

in terminating his LTD benefits.  As a plan beneficiary, plaintiff has the right to federal court review

of benefit denials and terminations under ERISA.  "ERISA was enacted to promote the interests of

employees and their beneficiaries in employee benefit plans, and to protect contractually defined

benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989).  Specifically, section

1132(a)(1)(B) grants plaintiff the right "to recover benefits due to him under the terms of the plan,

to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

terms of the plan."  A termination of benefits challenged under section 1132(a)(1)(B) is to be

reviewed under an arbitrary and capricious standard when a plan gives the claims administrator

discretionary authority to determine eligibility for benefits or to construe the terms of a plan.  See

Firestone, 489 U.S. at 115.  The parties do not dispute that the Plan gave LINA such discretionary authority.

The issue, then, is whether LINA acted arbitrarily and capriciously when it made the final decision to terminate plaintiff's LTD benefits on December 11, 2003.  Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, an "additional reduction in deference is appropriate" where there is an inherent or proven conflict of interest.  Fought v. Unum Life Ins. Co. of America, 379 F.3d 997, 1006 (10th Cir. 2004).  It is undisputed that LINA has an inherent conflict of interest as it is both payor and administrator of the Plan.  As such, there is a reduction in deference to the administrator's decision and LINA bears the burden of proving "that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence."  Id.

The determinative inquiry in this case is whether LINA's decision was supported by substantial evidence.  "'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].'  Substantial evidence requires 'more than a scintilla but less than a preponderance.'"  Sandoval v. Aetna Life and Cas. Inc. Co., 967 F.2d 377, 382 (10th Cir. 1992) (internal citations omitted).  "Evidence is not substantial 'if it is overwhelmed by other evidence -- particularly certain types of evidence (e.g., that offered by treating physicians), or if it really constitutes not evidence but mere conclusion.'"  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (citation omitted).  Medical information offered by a Plan participant's primary physician is to be considered, but it is not entitled to special deference.  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832 (2003).

6

The Court gives less deference to an administrator's conclusions if the administrator fails to gather or examine relevant evidence.  See Caldwell v. Life Ins. Co. of North America, 287 F.3d 1276, 1282 (10th Cir. 2002); Kimber v. Thiokol Corp., 196 F.3d 1092, 1097 (10th Cir. 1999).  The Court considers the record as a whole, but the Court considers only that information available to the plan administrator at the time the decision was made.  Hall v. Unum Life Ins. Co. of Am., 300 F.3d 1197, 1201 (10th Cir. 2002).  An administrator's decision "need not be the only logical one nor even the best one," Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1460 (10th Cir. 1991).

### III.

ERISA was enacted to protect contractual rights and, consequently, the terms of the Plan dictate.  See Firestone, 489 U.S. at 113.  LINA has discretionary authority to interpret the terms of the Plan.  LINA's interpretation of "his occupation" of technology consultant to be sedentary is reasonable.  To support their interpretation of Plan terminology, LINA cites the DOT definition of "technology consultant" which omits any travel requirement.  See Gallagher v. Reliance Standard Life Ins. Co, 305 F.3d 264, 271 (4th Cir. 2002) (where the "only significant discrepancy between the job description adopted by [defendant] and [employer's] description of [plaintiff's] actual job is the failure of the former to include the travel requirement," defendant's adoption of the DOT definition was reasonable).  Further, at the time plaintiff filed his initial disability benefits claim, his job did not require him to travel.  Given the sedentary nature of plaintiff's occupation, LINA acted reasonably in terminating his LTD benefits after receiving confirmation that plaintiff was capable of light work, which is a higher level of ability than sedentary.

Physician reports in 2002 and 2003 classify plaintiff as capable of working at a sedentary work level or greater.  In Fall 2003, Dr. Piper submitted evidence of plaintiff's improved physical status, plaintiff's ability to perform more than sedentary activities, and plaintiff's ability to use fine

manipulation at desk level.  At this time, LINA was aware that SSA had denied plaintiff's disability claim.  The SSA uses an "any occupation" standard rather than a "his occupation" standard adopted by the Plan.  Therefore, SSA's denial of plaintiff's claim for disability benefits may be persuasive, but it is not determinative.  See Pack v. Michelin Retirement Plan, 229 F.3d 1164 (10th Cir. 2000) ("There is no evidence that [defendant] placed any conclusive or otherwise undue reliance on this particular [SSA] report, or that its consideration of this report rendered its denial of benefits arbitrary and capricious.").

On appeal, LINA asked both plaintiff and his primary physician to submit medical evidence to support plaintiff's qualification for LTD benefits under the Plan.  However, plaintiff failed to produce evidence that he was "unable to perform all the essential duties of his occupation."  LINA specifically requested objective test results, but plaintiff failed to deliver.  The only "evidence" plaintiff submitted was Dr. Piper's subjective letter on appeal which opined that he would not release plaintiff to work.  Dr. Piper's opinions that he would not personally release plaintiff to return to work is irrelevant to the issue of whether plaintiff met the Plan's definition of "totally disabled."  The Plan does not reference a physician's release to return to work but rather focuses on ability to conduct work activities.  Evidence of plaintiff's capacity to perform in "his occupation" was substantial.  Therefore, LINA acted reasonably in terminating plaintiff's LTD benefits.

## IV.

In summary, defendants' decision to terminate plaintiff's LTD benefits is an exercise of the discretion granted by the Plan.  Viewing the record as a whole, LINA relied upon substantial evidence to interpret the terms of the Plan and to conclude that plaintiff did not meet the Plan's definition of "totally disabled."  The Court finds that defendants' decision to terminate plaintiff's

LTD benefits was not arbitrary and capricious.  This finding is based on the medical evidence submitted to and reviewed by LINA and does not rely upon the SSA determination.

**IT IS THEREFORE ORDERED** that defendants' December 11, 2003 final decision to terminate plaintiff's LTD benefits is hereby **AFFIRMED**.  A separate judgment is filed herewith.

**IT IS FURTHER ORDERED** that CIGNA is **dismissed** as a party to this action as it is a service mark and not a legal entity capable of suing or being sued.

**DATED** this 2nd day of March, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT